DECISION AND JUDGMENT ENTRY
{¶ 1} James and Constance Bevins appeal the trial court's entry granting summary judgment to the owner of a car wash in this "slip and fall" case. They dispute the trial court's conclusion that appellee had no duty to eliminate an unnatural accumulation of ice. However, the inherent risk associated with washing a car in subfreezing temperatures amounts to an open and obvious condition that absolved the appellee from taking any further action to protect the appellant. Absent some evidence to indicate that the appellee did anything to aggravate the danger inherent in that activity, we agree with the trial court that the appellee had no duty to eliminate the accumulation of ice. Therefore, we affirm the court's judgment.
 {¶ 2} At 6:00 a.m. one winter morning, Mr. Bevins went to the Royal Car Wash in Circleville to wash his Toyota Camry. While no precipitation had fallen in the past 24 hours, the temperature was around 16 or 17 degrees Fahrenheit.
 {¶ 3} According to his affidavit, Mr. Bevins finished washing the car and walked over to the change machine. As he stepped away from the change machine, his feet "went out from under [him]" and he fell. He had not noticed any ice as he walked over to the change machine, but after he fell, he noticed a thin sheet of ice on the concrete. Mr. Bevins stated that had he looked, he does not believe that he would have seen the thin sheet of ice.
 {¶ 4} Appellants filed a complaint against appellee, the owner of the Royal Car Wash. Appellants alleged that appellee negligently failed to maintain the premises in a reasonably safe condition. Appellee answered, denying liability.
 {¶ 5} Appellee subsequently filed a summary judgment motion. Appellee argued that even if Mr. Bevins's fall resulted from an unnatural accumulation of ice, no evidence existed to show that appellee was actively negligent in creating the unnatural accumulation of ice or that he failed to take reasonable steps to eliminate it.
 {¶ 6} In support of his summary judgment motion, appellee referred to his deposition and affidavit. Appellee testified that his car wash is open 24 hours a day. He stated that someone typically monitors the car wash between 8:30 a.m. and 4:00 p.m., that he checks on the car wash once or twice during the evening, and that he specifically looks for snow or ice accumulation in colder temperatures. Appellee asserted that when he notices a light accumulation of snow, he shovels it and that when he notices ice, he places salt on it. He stated that for heavier snowfalls, a contractor plows the snow.
 {¶ 7} Appellee also explained there is a heating system around the perimeter of the car wash building, including the area where the change machine is located, that helps prevent water from freezing. He stated the system consists of tubes that carry anti-freeze and warm water underneath the concrete to prevent icing. He further asserted that the inside of the car wash bays are sloped to prevent water from seeping outside of the bays. Appellee testified that he went to the car wash shortly after Mr. Bevins's accident and did not notice any ice accumulation.
 {¶ 8} The appellant responded with an opposing memorandum and the affidavit we previously mentioned.
 {¶ 9} The trial court entered summary judgment in appellee's favor after concluding that no evidence existed that appellee created the ice formation or that he had actual or constructive knowledge of its existence. The court determined that appellee "was not actively or passively negligent in maintaining" the car wash. The court noted that the evidence showed that appellee monitored the car wash throughout the day and evening and that appellee had installed the tubing to prevent ice from forming on the concrete surrounding the perimeter of the car wash bays. The court concluded that appellee and appellant shared equal knowledge about the conditions: "Common sense would alert a patron to a car wash to use reasonable care to avoid a hazard caused by the low temperature and the use of water at a car wash business." The court also concluded because there was no precipitation and appellee had not noticed ice the evening before, appellee did not have any reason to distribute a de-icing agent. The court found that appellee "made a reasonable attempt to keep the property reasonably safe for business invitees, and was not negligent in doing so. The condition was obvious, and [appellee] did not have superior knowledge that a thin layer of ice had formed by the change machine." Thus, the court entered summary judgment for the appellee.
 {¶ 10} Appellants timely appealed the trial court's judgment and assign the following error: "The trial court erred in granting appellee's motion for summary judgment."
 {¶ 11} Our review of a lower court's entry of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. We apply the same criteria as the trial court, which is the standard contained in Civ.R. 56. Lorain Natl. Bank v. Saratoga Apts.
(1989) 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Under Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to one conclusion when viewing the evidence in favor of the non-moving party, and that conclusion is adverse to the non-moving party. See, e.g., Grafton, supra. The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and of identifying those portions of the record that demonstrate the absence of a material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party meets this burden of proof, then the burden shifts to the non-moving party to offer specific facts showing a genuine issue for trial. Civ.R. 56(E), Dresher,
supra.
 {¶ 12} Appellants contend that genuine issues of material fact remain regarding whether "the hazardous condition on [appellee's] business premises was due to an unnatural accumulation of ice which placed appellee under a duty of care to protect its customers from the foreseeable harm resulting from that hazard." Appellants argue that because the accumulation of ice was unnatural, appellee possessed a duty to exercise reasonable care to protect his customers. Appellants claim that appellee "knew that the outside temperature was far below freezing near and during the time of Mr. Bevins' accident. Appellee should have reasonably anticipated that customers would use the self-service wash bays during that period * * * and that the ground outside of the wash bays would get wet and freeze." Appellants assert that appellee knew or should have known that water could accumulate near the change machine and should have done something to prevent the water from freezing during cold temperatures.
 {¶ 13} In a negligence action, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See, e.g., Menifee v.Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. Whether a duty exists is a question of law for the court to determine. See, e.g., Mussivand v. David (1989), 45 Ohio St.3d 314, 318,544 N.E.2d 265.
 {¶ 14} A possessor of premises generally owes a business invitee a duty of ordinary care in maintaining the property in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. See, e.g., Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203, 203, 480 N.E.2d 474. However, the general duty of reasonable care does not apply to the possessor when the hazard is so open or obvious that business invitees are expected to exercise reasonable care to protect themselves. See, Armstrong v. Best Buy, 99 Ohio St.3d 79,2003-Ohio-2573, 788 N.E.2d 1088. See, also, Paschal,18 Ohio St.3d at 204, citing Sidle v. Humphrey (1968), 13 Ohio St.3d 45, 233 N.E.2d 589, paragraph one of the syllabus.
 {¶ 15} Thus, owners and occupiers of business premises generally do not have a duty to remove natural accumulations of ice and snow. SeeDeAmiches v. Popczun (1973), 35 Ohio St.2d 180, 299 N.E.2d 265, paragraph one of the syllabus; Sidle, paragraph three of the syllabus; Chatelainv. Portage View Condominiums, 151 Ohio App.3d 98, 783 N.E.2d 587,2002-Ohio-6764, ¶ 8. Ohio law affixes no duty upon the possessor in these situations because ice and snow are a natural and unavoidable condition in winter and because it is reasonable to charge the business invitees with protecting their own safety in light of the obvious risk such conditions impose.
 {¶ 16} However, unnatural accumulations of ice and snow may create a duty upon the possessor in favor of an invitee. See, generally,Lopatkovich v. Tiffin (1986), 28 Ohio St.3d 204, 207, 503 N.E.2d 154;Bittinger v. Klotzman (1996), 113 Ohio App.3d 847, 682 N.E.2d 688; Porterv. Miller (1983), 13 Ohio App.3d 93, 468 N.E.2d 134. Of course, the threshold question is whether the accumulation is natural or unnatural.
 {¶ 17} A natural accumulation of ice or snow is one that arises as a result of an act of nature. See, e.g., Perazzo v. Dayton Hasty-Tasty,Inc. (1962), 119 Ohio App. 453, 458, 200 N.E.2d 706. "An unnatural accumulation is one that results from the act of a person — one caused by `factors other than the inclement weather conditions of low temperature, strong winds and drifting snow.'" See Davis v. The TimbersOwners' Assn. (Jan. 21, 2000), Hamilton App. No. C-990409, quoting Porterv. Miller (1983), 13 Ohio App.3d 93, 95, 468 N.E.2d 134. The term "unnatural accumulation" refers to causes and factors other than such inclement weather conditions as low temperature, strong winds and drifting snow. Porter, supra. In other words, unnatural accumulations are man-made or man-caused. Id.
 {¶ 18} Here, little question exists that the ice accumulation was "unnatural". No evidence exists to show that any precipitation fell in the Circleville area in the 24 hours before Mr. Bevins fell. Thus, the ice accumulation appears to have been caused not as the result of snow, rain, or other natural weather phenomenon but instead as the result of water from a car wash. However, simply because the ice accumulated unnaturally does not mean that liability automatically attaches.
 {¶ 19} In this instance, we believe the danger of finding icy conditions when using a car wash in subfreezing temperatures is so "obvious" that no duty attaches to the owner unless the owner has done something to aggravate the risk inherent in that activity. See Sweet v.Cieslak (1986), 499 N.E.2d 1218, 1219 (no duty to warn plaintiff of the open and obvious danger of attempting to wash a car in near zero weather). As the trial court aptly noted, common sense dictates that any time one uses water to spray a car during subfreezing temperatures, an ordinary prudent person should expect that mist may settle and render the ground slippery. The record here contains no evidence that appellee aggravated the hazard that appellant faced when he chose to wash his car at 6:00 A.M. in subfreezing conditions. Appellee took reasonable steps to prevent ice from forming in the areas around the car wash bays, but unfortunately, those steps did not prevent Bevins's injury. Simply because appellee's attempts to keep the premises absolutely free from icy patches failed to prevent an injury does not mean that he had a duty to do more where the risk associated with using the car wash in subfreezing temperatures amounted to an open and obvious condition.
 {¶ 20} Appellant urges us to conclude that this case should be decided by a jury under issues of proximate cause and comparative negligence. However, the Supreme Court of Ohio has expressly cautioned lower courts against confusing the concepts of a defendant's duty and a plaintiff's comparative negligence. See, Armstrong v. Best Buy, supra at paragraph twelve. Armstrong rejected the characterization of the open and obvious doctrine as a defense that should be submitted to the jury as a part of the comparison of relative fault because such an approach overlooks the axiom that where there is no duty, there is no fault to be apportioned. Id. at paragraph eleven. Moreover, Armstrong also specifically rejected Section 343(A) of the Restatement of the Law 2d, Torts (1965), which imposes a duty when the possessor should have anticipated the harm despite the invitee's knowledge of the obviousness of the condition. Id. at paragraph nine.
 {¶ 21} Therefore, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
Abele and Kline, JJ., concur in judgment and opinion.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commences from thedate of filing with the clerk.