OPINION
{¶ 1} This accelerated calendar appeal arises from the Trumbull County Court of Common Pleas. Appellants, Nina and Robert Notman, appeal the judgment entered by the trial court in favor of appellees, AM/PM, Inc. and its agent, Carolyn A. Kelly.
 {¶ 2} On December 26, 1998, Appellant Nina Notman ("Mrs. Notman") was washing her car in Hubbard, Ohio, at a car wash owned by appellees. While washing her car, she ran out of quarters to continue operating the machine. She left the bay of the car wash to get change from a change machine on the outside of the building. As she left the bay and stepped onto the pavement, Mrs. Notman slipped on some ice and sustained injuries. Both parties agree that Mrs. Notman was a business invitee of the car wash at the time she fell.
 {¶ 3} The car wash was owned by AM/PM, Inc. Carolyn Kelly is the sole owner and statutory agent of the corporation. Her husband, Donald Kelly ("Mr. Kelly"), runs the day-to-day operations of the car wash. In his deposition, he testified that he put salt on the pavement the day Mrs. Notman fell.
 {¶ 4} Mrs. Notman filed this action against appellees. In addition, her husband, Robert Notman, is alleging loss of consortium.
 {¶ 5} Appellees filed a motion for summary judgment. Attached to appellees' motion for summary judgment were several documents containing climate data from the Youngstown, Ohio area for December 1998. Appellants filed a response to this motion. Appellants attached transcripts of the depositions of Mrs. Notman and Mr. Kelly.
 {¶ 6} The trial court granted appellees' motion for summary judgment. The court held that appellees were not liable, as a matter of law, because a business owner does not have a duty to remove ice and snow. In addition, the court found that appellants' claim was barred because they did not submit any expert testimony regarding an alleged manufacturing defect at the car wash.
 {¶ 7} Appellants raise two assignments of error. Their first assignment of error is:
 {¶ 8} "Whether the trial court erred and abused its discretion in granting appellees' motion for summary judgment since a genuine issue of material fact does exist precluding appellees' from summary judgment."
 {¶ 9} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] In addition, it must appear from the evidence and stipulations that reasonable minds can reach only one conclusion, which is adverse to the non-moving party.[2] The standard of review for the granting of a motion for summary judgment is de novo.[3]
 {¶ 10} In Dresher v. Burt, the Supreme Court of Ohio set forth a burden shifting exercise to occur on a summary judgment determination. Initially, the moving party must point to evidentiary materials to show that there are no genuine issues of material fact and they are entitled to judgment as a matter of law.[4] If the moving party meets this burden, a reciprocal burden is placed on the non-moving party to show that there is a genuine issue of fact for trial.[5]
 {¶ 11} The trial court found that appellees were entitled to judgment as a matter of law. For the following reasons, we disagree. Specifically, the trial court found "there is no responsibility to protect a business invitee from ice and snow." This statement of law is not entirely accurate.
 {¶ 12} The trial court's position is consistent with the general rule, that a business owner does not have a duty to protect his customers from the natural accumulations of snow and ice.[6] The rationale for this rule is that Ohio winters can produce significant amounts of snow or ice in a brief period of time, and it would often be impractical or impossible for business owners to discharge a duty to remove all snow and ice.[7] However, an exception to the general rule exists, and "liability will arise when an owner or occupier of land is `actively negligent in permitting and/or creating a dangerous or unnatural accumulation of snow and ice.'"[8] Accordingly, "[t]he law of Ohio holds that the business owner is not liable for injuries to his customers for injuries occasioned by slips and falls upon natural accumulations of ice and snow, but that the business owner may be liable where the accumulation is unnatural."[9]
 {¶ 13} Appellees, as the moving party, did not meet their initial burden of showing there was no genuine issue of material fact on the issue of whether the ice was natural or unnatural. In their motion for summary judgment, appellees cite case law concerning the general duty owed to a business invitee. They do not address unnatural accumulations of ice.
 {¶ 14} In her deposition, Mrs. Notman testified that the water that froze into the ice on the pavement came from the spray used in the car wash. In addition, Mr. Kelly testified that the mist from the car wash hoses would form ice on the blacktop under certain conditions. Moreover, appellees submitted weather reports from the area. These weather reports reveal there was no natural precipitation on the day in question in the area. This evidence indicates that the ice accumulations that caused Mrs. Notman to slip and fall may have been unnatural, in that they could have been formed by mist or runoff from the hoses at the car wash. Therefore, there was a genuine issue of material fact to the issue of whether the ice accumulations were natural or unnatural.
 {¶ 15} If a trier of fact determines that the ice accumulation was unnatural, appellees may have been negligent in regard to Mrs. Notman's accident. Likewise, a trier of fact could find that appellees had a duty to remove or warn of the danger. However, even if a trier of fact found that the ice accumulations were unnatural and appellees were negligent in failing to remove or warn of the accumulations, appellees may not ultimately be liable. As the Tenth Appellate District has noted:
 {¶ 16} "[E]ven when an owner or occupier is aware of an unnatural accumulation of ice and breaches its duty by failing to remove or warn, the owner or occupier will not be liable `if the owner or occupier and the invitee are equally aware of the dangerous condition and the invitee voluntarily exposes himself to the hazard, the owner or occupier will not be liable. See DeAmiches v. Popczun.'"[10][11]
 {¶ 17} Arguably, appellees met their initial burden to show that appellants offered no evidence to show appellees had notice of the ice. In their motion for summary judgment, appellees assert that appellants failed to offer any evidence to show that appellees had notice of the ice. However, appellants met their reciprocal burden to show that there remained a genuine issue of material fact as to whether appellees had notice of the ice. In appellants' response to appellees' motion for summary judgment, they point to the deposition of Mr. Kelly. Therein, Mr. Kelly states, "if it's cold and the wind chill is down, then that mist [from the car wash] will freeze when it hits the ground." Further, he stated that he had seen mist land on the blacktop area, and it would form ice if the area was not salted. Finally, he stated that he salted the area on the day Mrs. Notman slipped. At the very least, this evidence shows that there is a genuine issue of material fact as to whether appellees had notice of the ice.
 {¶ 18} Regarding the issue of whether Mrs. Notman was equally aware of the ice accumulations, appellees have not met their initial burden to show there are no genuine issues of material fact. In fact, in their motion for summary judgment, appellees note that Mrs. Notman stated in her deposition that she was not aware of any ice on the blacktop. Thus, appellees were not entitled to summary judgment on the issue that Mrs. Notman was equally aware of the hazardous condition.
 {¶ 19} Appellants met their reciprocal burden, by pointing to the depositions of Mrs. Notman and Mr. Kelly, to show there remained genuine issues of material fact on the issues of: (1) whether the ice accumulations were unnatural; (2) whether appellees had notice of the ice on the blacktop; and (3) whether appellees were negligent in failing to remove or warn of the condition. Finally, appellees did not meet their initial burden to show that Mrs. Notman was equally aware of the ice on the blacktop.
 {¶ 20} As there remain genuine issues of material fact, the trial court erred by entering summary judgment in favor of appellees. Appellants' first assignment of error has merit.
 {¶ 21} Appellants' second assignment of error is:
 {¶ 22} "The trial court erred when it looked beyond the pleadings and evidence presented in basing its decision granting judgment on an issue never raised or argued."
 {¶ 23} The trial court ruled that appellants were barred from asserting their claim because they did not provide expert testimony regarding an alleged manufacturing defect at the car wash. For the following reasons, we hold that the lack of expert testimony was not fatal to appellants' case.
 {¶ 24} "`Natural' accumulations of snow and ice are caused by inclement weather conditions, such as `low temperatures, strong winds, and drifting snow.'"[12] However, "`[u]nnatural' accumulations of snow and ice are not caused by forces of nature, but instead are `man-made or man-caused.'"[13] As unnatural accumulations are either man-made or man-caused, it reasons that unnatural accumulations fall within two general categories. The first is water that comes from natural sources, but is unnaturally impeded on a land-owner's property.[14] The second is when the water, itself, comes from an unnatural, i.e. man-made, source.[15]
 {¶ 25} In Dailey, the court held that expert testimony was necessary to show a construction defect, which allegedly caused the unnatural impediment of water.[16] However, in Skinner, the court found that affidavits were sufficient to show that the ice was an unnatural accumulation because it was caused by water from a faucet.[17] In addition, the Skinner Court found that there was evidence presented to indicate that the owner knew the faucet was used year-round and should have known that it could cause an ice patch in certain weather conditions.[18]
 {¶ 26} The rationale for requiring expert testimony to prove a construction defect is that construction defects are generally outside the expertise of lay persons.[19] However, a lay person may testify that the water that froze into ice came directly from a man-made source such as a hose or faucet. Such testimony is a first-hand observation of the lay witness.
 {¶ 27} As was the case in Skinner, the case sub judice allegedly involves water coming from a man-made source, the car wash hoses. Although appellants' complaint alleged there were drainage problems at the car wash, this was not the conclusive issue in the case. The mere fact that water, which originated from the hoses of the car wash, froze on the pavement may be enough to establish liability on behalf of the appellees. Again, the negligence issue must be determined by a trier of fact.
 {¶ 28} The trial court erred by ruling that appellants had to submit expert testimony to succeed in their lawsuit. Thus, appellants' second assignment of error has merit.
 {¶ 29} The judgment of the trial court is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.
Judith A. Christley and Cynthia Westcott Rice, JJ., Concur.
[1] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[2] Civ.R. 56(C).
[3] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[4] Dresher v. Burt, 75 Ohio St.3d at 293.
[5] Id.
[6] Lopatkovich v. Tiffin (1986), 28 Ohio St.3d 204, 206.
[7] Id. at 207, quoting Norwalk v. Tuttle (1906), 73 Ohio St. 242,245.
[8] Collier v. Cappadonna (June 30, 2000), 11th Dist. No. 99-L-030, 2000 Ohio App. LEXIS 2985, at *7, quoting Lopatkovich v. Tiffin,
supra.
[9] McDonald v. Koger, 150 Ohio App.3d 191, 2002-Ohio-6195, at ¶6.
[10] DeAmiches v. Popczun (1973), 35 Ohio St.2d 180.
[11] Skinner v. N. Mkt. Dev. Auth., Inc. (July 10, 1997), 10th Dist. No. 96APE12-1655, 1997 Ohio App. LEXIS 3015, at *6-7, quoting Bowins v.Euclid Gen. Hosp. (1984), 20 Ohio App.3d 29, 31.
[12] Mayes v. Boymel, 12th Dist. No. CA2002-03-051, 2002-Ohio-4993, at ¶ 10, quoting Porter v. Miller (1983), 13 Ohio App.3d 93, 95.
[13] Id.
[14] See, e.g., Dailey v. Mayo Family L.P. (1996),115 Ohio App.3d 112.
[15] See, e.g., Skinner v. N. Mkt. Dev. Auth., Inc., supra.
[16] Dailey v. Mayo Family L.P., supra.
[17] Skinner v. N. Mkt. Dev. Auth., Inc., supra.
[18] Id.
[19] See, generally, Collier v. Cappadonna and Dailey v. Mayo FamilyL.P., supra.